**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SMITA A. PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-2238 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| MEGAN J. BRENNAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Smita Patel, a *pro se* litigant, brought this employment discrimination lawsuit against Megan J. Brennan, the Postmaster General of the United States ("the Postal Service"). She alleges race, color, religion, national origin, gender, age, retaliation, and disability discrimination under Title VII, section 1981, the ADEA, and the Rehabilitation Act.

The complaint offers two theories of discrimination. The first theory is about her use of a scooter at work, after she had knee replacement surgery. Her theory is *not* that the Postal Service refused to allow her to use a scooter. It did. And her theory is not that the Postal Service should have paid for a scooter. Her theory seems to be that the Postal Service allowed her to use a scooter in 2018–2019, but did not allow her to use a scooter from 2007–2013, so therefore the Postal Service must have discriminated against her way back when.

The second theory is about another job. Patel alleges that the Postal Service discriminated against her when it refused her request for a lateral transfer to a new position. She expressed interest in the job by sending an email to a supervisor, but never formally applied.

The Postal Service filed for summary judgment. The Postal Service argues that it did, in fact, allow Patel to use a scooter at work after her knee replacement surgery. So there was no

adverse action because she scooted around the office, just like she wanted. On the second theory, the Postal Service points out that it filled the position through a competitive application process, and Patel did not apply.

For the reasons that follow, Defendant's motion for summary judgment is granted.

### Non-Compliance with the Local Rules

The Court begins by calling attention to Plaintiff's non-compliance with the Local Rules about how to respond to a motion for summary judgment.

At the summary judgment stage, a plaintiff cannot rely on mere allegations. Summary judgment is the time for evidence. When a defendant files a properly-supported motion for summary judgment, the plaintiff must present evidence showing a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). That is, the plaintiff must come forward with evidence that demonstrates a fact issue that creates a need for a trial. The jury is the finder of fact, and there needs to be some factual dispute for the jury to decide.

The Local Rules establish a procedure for how a party must support a motion for summary judgment, and how the opposing party must respond. In particular, the Local Rules require movants to file a statement of facts that "consist[s] of concise numbered paragraphs." *See* L.R. 56.1(d)(1). The response by the non-movant "must consist of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement of material facts. *See* L.R. 56.1(e)(1). And "[e]ach paragraph shall set forth the text of the asserted fact . . . and then shall set forth the response." *Id.* That way, it is easy for the Court and the parties to see the facts from one side, and the response from the other.

Importantly, the non-movant cannot respond to a statement of facts by simply denying those facts, without more. The non-movant must come forward with evidence, not expressions

of disagreement. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("In addition, where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial."); *see also Bergholz v. John Marshall L. Sch.*, 448 F. Supp. 3d 887, 893 (N.D. Ill. 2020) ("[Plaintiff] denies this, but he fails to cite any record evidence indicating he has such personal knowledge, so the fact is deemed admitted."); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 885 (N.D. Ill. 2005) ("To the extent that defendant's denials are not supported by citations to evidence in the record, the court agrees with plaintiff that those denials do not create a dispute of material fact.").

*Pro se* litigants must comply with the Local Rules, too. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[T]he Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure.") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[P]ro se litigants are not entitled to general dispensation from the rules of procedure or court imposed deadlines."); *Harris v. Coppes*, 2019 WL 2435847, at *1 (N.D. Ill. 2019) ("[Plaintiff's] *pro se* status does not excuse him from complying with Local Rule 56.1.") (collecting cases).

*Pro se* litigants get some latitude, but it only goes so far. There are not two sets of rules: one for *pro se* litigants, and another for everyone else. Everyone plays by the same Rules.

Here, the Postal Service supported its motion for summary judgment by filing a statement of material facts under Local Rule 56.1. *See* Def.'s Statement of Facts (Dckt. No. 30). That filing complied with the Local Rules. The Postal Service presented discrete facts in numbered paragraphs, and supported each fact with citations to admissible evidence in the record. *Id.*

3

Defendant also filed and served an explanation of the summary judgment procedures, called a Local Rule 56.2 Notice. That filing gave Patel simple instructions – in plain English, not legalese – about how to file a response that complies with the Federal Rules and the Local Rules. *See* Notice (Dckt. No. 32). It was a how-to guide for a *pro se* litigant.

Patel responded to the statement of material facts, twice. She responded to the facts in two separate documents filed on the same day. She filed a response to the statement of facts, and then largely repeated that response in her opposition brief. *See* Pl.'s Resp. to Def.'s Statement of Facts (Dckt. No. 39); Pl.'s Resp. to Def.'s Mtn. for Summ. J., at ¶¶ 1–27 ("Patel Response") (Dckt. No. 40, at 3–11 of 42). The two responses are similar, but not identical, so the Court will address them separately.

Patel's first response suffers from several problems. *See* Pl.'s Resp. to Def.'s Statement of Facts (Dckt. No. 39). For starters, the response did not restate the facts offered by the Postal Service. That omission made her filing difficult to navigate. It required the Court to flip back and forth between two documents, to see what the Postal Service offered as a proposed fact, and what Patel said in response. The filing made things unnecessarily cumbersome.

The content of Patel's response is more problematic. Only two of Patel's 27 responses cite to any evidence. For 25 of the 27 paragraphs, Patel responded with no evidence. So, the Postal Service offered evidence to support the proposed facts, and Patel did not come forward with anything on her side of the ledger.

Even the two paragraphs that cited evidence were problematic. Those two responses cited to the same document, something called "2012 MSPB Docket # CH-0353-11-0410-I-1." *See* Pl.'s Resp. to Def.'s Statement of Facts, at ¶¶ 5–6 (Dckt. No. 39). That document is a decision from the Merits Systems Protection Board denying her request for a scooter in 2012

(more on that later).  Patel cited that document writ large, without offering a page number.  And worse yet, Patel did not offer any explanation, either.  So, for example, the sum total of her response to paragraph 5 stated:  "Dispute.  2012 MSPB Docket # CH-0353-11-0410-I-1."  *Id.* at ¶ 5.

The rest of Patel's responses are mere denials (at best) or hyperbole (at worst).  For example, one paragraph floated a question about jumping off a building.  *See id.* at ¶ 20 ("Jeffery Grendziak never told me anything face to face about the job position apply [sic] procedure. Even if he said, why not correct it on the position posting on eCareer?  Did he informed [sic] nationwide on eCareer?  If he or she says jump from the building, does not mean I have to jump from the building."); *id.* at ¶ 15 ("This is unbelievable and only happens in the postal Service.  When my doctor did not write about scooter, postal Service wants me to have scooter because they know that they are discriminating me [sic] by not giving it to me when a black female is using the scooter and postal service should accommodate me.  Wow.").

The Court strikes Patel's first response for failure to comply with the Local Rules.  *See Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) ("The obligation set forth in Local Rule 56.1 'is not a mere formality.'") (citation omitted); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) ("[Local Rule 56.1] substantially facilitates the district court's task in deciding whether a trial is indeed necessary.  [Plaintiff's] failure to comply with the local rule was, accordingly, not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal.").

Patel's second response (in her brief) is not much better.  The document is entitled "Memorandum in Response to Defendant's Motion for Summary Judgment."  *See* Patel Response (Dckt. No. 40).  Despite the title, the document begins with a set of numbered

paragraphs responding to Defendant's statement of facts. Patel offered a more detailed response to the Postal Service's facts in that document (*i.e.*, the brief), even though the other document purported to be her response to the statement of facts. *Id.* at ¶¶ 1–27. The rest of the second document is her response memorandum. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. ("Patel Mem.") (Dckt. No. 40, at 11–39 of 42).

The Court will treat that filing as her operative response to the movant's statement of facts under the Local Rules. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); L.R. 56.1(e)(1). But it falls short of the Local Rules in a number of ways, too.

For example, like her first response, her second response fails to restate the text of Defendant's facts before responding. Once again, that omission made the Court's review more difficult.

The citations were problematic, too. Patel submitted more than 600 pages of exhibits, but did not provide page numbers for most of her citations. *See* Patel Mem., at ¶¶ 1, 5, 6, 8 (Dckt. No. 40). So, if this Court wants to find support for what Patel is saying, the Court has to go on a bit of voyage and hunt through the record.

Patel also cites to a document (called "Ref III EEO case # 1J-531-0006-19 Patel S, Job Posting Pages 1-3") that is nowhere in the record. *Id.* at ¶¶ 1, 17, 18. So this Court can't consider it.

At other times, Patel relies on denials, argument, or rhetorical questions without any supporting evidence. *See, e.g.*, *id.* at ¶¶ 2, 6, 20.

The Court will not dig through the summary judgment record to identify disputed issues of fact or evidentiary support for a party's claims. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not

required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").  Patel's second response to the Postal Service's statement of facts is, for the most part, insufficient under the Federal and Local Rules.

By and large, the Postal Service supported its statement of facts with admissible evidence, and Patel did not respond by offering admissible evidence of her own.  So the Court accepts most of Defendant's facts as true for the purposes of its motion for summary judgment. *See, e.g.*, *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (quotation marks omitted).  There are a few exceptions, and the Court will draw attention to them as necessary.

### Background

Patel is a 40-year-old, Indian-American woman with a knee injury.  *See* Def.'s Statement of Facts, at ¶ 1 (Dckt. No. 30).  She is a practicing Hindu.  *Id.*

She has "prior EEO activity," which the Court takes to mean that she has made complaints about her workplace at other times.  *Id.*  The record includes a document from her dispute in 2012 about the use of a scooter.  *See* 2012 MSPB Decision (Dckt. No. 41-7).  In 2012, the Merit Systems Protection Board denied her request to use a scooter, and the Federal Circuit affirmed.  *Id.*; *Patel v. Postal Serv.*, 498 F. App'x 33 (Fed. Cir. 2012).

Patel began working for the Postal Service in 1995, later reaching the role of supervisor of distribution operations (SDO) at the Palatine Processing and Distribution Center. *Id.* In her supervisory position, she counted mail and managed the unit. *Id.* at ¶ 2. At times, her position required her to stand and walk continuously for up to eight hours. *Id.*

In 2017, Patel underwent right knee replacement surgery. *Id.* at ¶ 3. The parties do not pinpoint when the surgery took place. Patel mentions January 2017 in her filings, so the Court assumes that the surgery took place in early 2017. *See* EEO Complaint of Discrimination, at 2 (Dckt. No. 31-4); Cplt., at ¶ 13 (Dckt. No. 1); Patel Response, at ¶ 3 (Dckt. No. 40). The important point is that the surgery took place in 2017.

That surgery led to a series of notes from her doctor, and a string of restrictions about what she could do at work. For the next year and a half, she had an on-again, off-again work history. When she was able to work, she did so on a limited basis, with a number of accommodations in place.

In January 2018, Patel's doctor assessed her mobility after the surgery and "released her to limited-duty work." *See* Def.'s Statement of Facts, at ¶ 3 (Dckt. No. 30). The record includes the doctor's Work Restriction Form dated January 3, 2018. *See* January Work Restriction Form, at 2 (Dckt. No. 31-12). The form spans a single page, and it noted that Patel had received knee replacement surgery. *Id.*

The doctor basically checked a few boxes. It authorized her to "return to work 1/4/18," but placed restrictions for the next two months. *Id.* There were six restrictions: (1) limited duty; (2) no excessive twisting, turning, bending, sitting, or standing; (3) no stair climbing, kneeling or squatting; (4) no lifting over 10 pounds; (5) limited to a four-hour work day; and (6) no more than 10 minutes of standing/walking, and 50 minutes of sitting, every hour. *Id.*

The doctor added that she "may use a cane for support." *Id.* There was no mention of any scooter.

In response to the doctor's note, the Postal Service prepared a limited-duty assignment for Patel. *See* Def.'s Statement of Facts, at ¶ 3 (Dckt. No. 30). The "modified assignment" limited her workdays to four hours, and limited her time "sitting, standing, walking and communicating w/employees" to 10 minutes per hour. *See* January Offer of Modified Assignment, at 2 (Dckt. No. 31-14). The Postal Service offered Patel the limited assignment on January 9, 2018, effective on January 13. *Id.* at 2–3.

It is not entirely clear what happened next. The Postal Service states that Patel was "released to limited-duty work in January 2018," but "[f]or reasons not relevant here," Patel did not begin working again until March 2018. *See* Def.'s Statement of Facts, at ¶ 7 (Dckt. No. 30). Presumably that statement means that the Postal Service approved limited-duty work in January 2018, but Patel didn't take it.

Patel acknowledges that she didn't work until March. *See* Patel Response, at ¶ 3 (Dckt. No. 40). But she states that the Postal Service "never gave me limited duty-assignment" because her plant manager "sent me home saying there is no work for me and they will let me know in writing." *Id.* While she doesn't cite the record, her deposition makes a similar point. *See* Patel Dep., at 21:18-24 (Dckt. No. 31-3) ("Q: Did you return to work then? A: Yes, I did. Q: And what happened? A: Ms. Judy Green and Ms. Caminata send [sic] me home saying they don't have work for me. Q: And why was that? A: According to my restriction.").

The record includes a copy of the offer of a limited-duty assignment from the Postal Service dated January 9, 2018, but it was not signed by Patel. *See* January Offer of Modified

Assignment, at 2 (Dckt. No. 31-14). In her deposition, she denied receiving an offer in January 2018 for a modified work assignment. *See* Patel Dep., at 22:10-15 (Dckt. No. 31-3).

So the record is hazy about what, exactly, happened in January 2018 with her limited-duty work assignment. The important point is that Patel didn't go back to work at that point.

Two months later, in March 2018, Patel's doctor prepared another note. The doctor released her to eight-hour workdays but with the same restrictions. *See* Def.'s Statement of Facts, at ¶ 8 (Dckt. No. 30); March Work Restriction Form, at 2 (Dckt. No. 31-13). Again, the note made no reference to any scooter.

Patel returned to work for a few days in March 2018. *See* Def.'s Statement of Facts, at ¶ 9. But she then took herself off work because of knee pain. *Id.*

Patel stayed off work until August 2018. *Id.* She submitted a note from her doctor in April, and another note in June. Each note covered the next two months, and advised that Patel should do "[n]o work until further evaluation." *See* April & June Work Restriction Forms, at 2–3 (Dckt. No. 31-15). Neither note mentioned a scooter.

The doctor's evaluation changed in August 2018. The doctor released her to full-time work, with the same restrictions that the doctor had recommended in January 2018. *See* Def.'s Statement of Facts, at ¶ 10 (Dckt. No. 30); *see also* August Work Restriction Form, at 2 (Dckt. No. 31-16). And again, there was no mention of a scooter.

So, to take stock, between January 2018 and August 2018, Patel communicated her work restrictions to the Postal Service by submitting five notes from her doctor (in January, March, April, June, and August). None of the notes said anything about a scooter. Patel exclusively relied on the doctor's notes to communicate her work restrictions to the Postal Service. *See* Def.'s Statement of Facts, at ¶ 6 (Dckt. No. 30). There is no evidence of her ever requesting a

scooter or discussing a scooter with anyone at work. *Id.*; *see also* Patel Dep., at 28:17-24 (Dckt. No. 31-3).

In response to the doctor's note from August 2018, the Postal Service prepared another offer of limited-duty assignment for Patel. *See* Def.'s Statement of Facts, at ¶ 11 (Dckt. No. 30). The Postal Service offered the assignment on September 5, 2018, and it aligned with the restrictions recommended by her doctor in August 2018. *See* September Offer of Modified Assignment, at 2 (Dckt. No. 31-17).

This time – unlike January 2018 – Patel accepted the modified assignment, but with a caveat. At some point that year, a manager of distribution operations at the Palatine facility (Michelle Oliver) began using a scooter. *See* Def.'s Statement of Facts, at ¶ 12 (Dckt. No. 30). Apparently, Patel got wind of Oliver's new mobility. And Patel wanted a scooter, too.

In the margin next to her signature on the Postal Service's offer of limited work, Patel wrote: "I signed this with scooter requirement," and "before, in the past, no scooter available." *See* September Offer of Modified Assignment, at 2 (Dckt. No. 31-17).

The record does not shed any light about what Patel meant by the phrase "scooter requirement." There is no evidence in the record that Patel ever discussed her request to use a scooter with the Postal Service in 2018 before she returned to work. Maybe Patel discussed the scooter with someone from the Postal Service before she signed the offer. But if so, there is no such evidence in the record. Maybe she just added a demand for a scooter to the document when she signed it.

Patel accepted the offer on September 5, 2018. *Id.* She returned to work in September 2018. *See* Def.'s Statement of Facts, at ¶ 12 (Dckt. No. 30).

11

Patel then began using her own scooter at work. *Id.* In October 2018, her doctor prepared a note that referred to a scooter, for the first time. *Id.* at ¶ 13. "Patient may use a scooter at work." *See* October Work Restriction Form, at 2 (Dckt. No. 31-18). Notice the verb – the doctor wrote that she "may" use a scooter, not that she "must" use a scooter. *Id.* The doctor did not *require* the use of a scooter. *Id.*; *see also* Def.'s Statement of Facts, at ¶ 14 (Dckt. No. 30) ("Patel acknowledges that her doctor's note did not require the use of a scooter.").

There is no evidence in the record that the Postal Service ever told Patel that she could *not* use a scooter in 2018 or 2019. In fact, the record shows that she did, in fact, use a scooter from September 2018 through April 2019. *See* Def.'s Statement of Facts, at ¶¶ 12, 15 (Dckt. No. 30). The key point is that Patel started using a scooter, and the Postal Service did not prevent her from using a scooter.

In October, only a few weeks after returning to work, a new vacancy opened up for a "supervisor of distribution operations." *Id.* at ¶ 17. At the time of the vacancy, Patel reported to Jacqueline Koger, who reported to the plant manager, Elizabeth Wulf. *Id.* at ¶ 16.

Patel wanted the job. So she emailed Koger asking for a non-competitive lateral transfer. *Id.* at ¶ 18.

But Koger testified that she didn't see Patel's email before the deadline. The posting for the position was open between October 9 and October 15. *See* Internal Publication of Job Posting, at 2 (Dckt. No. 31-21). Patel emailed Koger on October 14, right before the deadline. *See* Def.'s Statement of Facts, at ¶ 19 (Dckt. No. 30). According to Koger, she was out of the office in a training session from October 14 until October 19, so she didn't read Patel's email until after the application period had closed. *Id.*

In her filing, Patel contends that Koger received her email. She says that Koger responded with a "received" email. *See* Patel Response, at ¶ 19 (Dckt. No. 40). But she offers no details. And more importantly, she offered no evidence. So, for summary judgment purposes, there is no genuine issue of fact about whether Koger reviewed Patel's email before the October 15 deadline.

The Postal Service filled the position competitively through its "eCareer" online system. *See* Def.'s Statement of Facts, at ¶ 19 (Dckt. No. 30). Patel did not apply through the eCareer platform, so she was never in the running for the vacancy. *Id.* at ¶ 22. She merely sent her email request to Koger. *Id.*

Patel didn't get the job. Seventy-three applicants applied for the role on the platform, and 11 were offered interviews. *Id.* at ¶ 21. One of those interviewees (Mary Wallace) was selected for the position. *Id.*

The record includes testimony that Patel knew about the need to apply through the eCareer platform. The acting plant manager (Jeffrey Gredziak) testified that he personally told Patel that she needed to apply on eCareer to be considered for the position. *Id.* at ¶ 20. Patel denies it, but she offered no evidence (*e.g.*, a declaration, or a passage from her deposition). *See* Patel Response, at ¶ 20 (Dckt. No. 40).

Patel didn't get her lateral transfer, and she stayed at the Postal Service until April 2019. *See* Def.'s Statement of Facts, at ¶ 15 (Dckt. No. 30); Patel Dep., at 44:2-16 (Dckt. No. 31-3). From September 2018 to April 2019, Patel used a scooter. *See* Def.'s Statement of Facts, at ¶¶ 12–15. Unfortunately, she suffered another injury in April 2019. *Id.* The record does not reveal what the injury was. She has not returned to work since the injury. *Id.*

13

In January 2019, Patel filed an EEO Complaint of Discrimination with the Postal Service. She complained about the scooter, alleging discrimination on nine grounds: (1) race, (2) color, (3) religion, (4) national origin, (5) gender, (6) age, (7) retaliation, (8) disability, and (9) genetic information. *See* EEO Complaint of Discrimination, at 2 (Dckt. No. 31-4).

She then submitted an amended complaint to the Postal Service, adding that she faced discrimination when she was denied her request for a lateral transfer. *See* Information for Pre-Complaint Counseling, at 2 (Dckt. No. 31-5); Acknowledgement of Amendment to Complaint, at 2–3 (Dckt. No. 31-7). Her claim about the lateral transfer involved the same theories of discrimination as her claim about the scooter, except that she didn't include an allegation about her genetic information. *Id.*

The EEO office reviewed the complaint and made a decision partly accepting, and partly dismissing, her complaint. *See* Partial Acceptance / Partial Dismissal of Formal EEO Complaint (Dckt. No. 31-6). The EEO office dismissed her complaint about the use of a scooter from 2007 through 2013 because Patel did not raise the issue within 45 days. *Id.* at 2–4. But the EEO office did accept for consideration her complaint about the use of a scooter from July 2017 to September 2018. *Id.*

The summary judgment record does not reveal much, if anything, about the EEO's investigation about the merits of her claim about the use of a scooter in 2017–2018, and about her request for a lateral transfer. The Postal Service did file a collection of affidavits from that investigation. *See* Patel Aff. (Dckt. No. 31-8); Wulf Aff. (Dckt. No. 31-9); Koger Aff. (Dckt. No. 31-10).

Patel attached to her complaint a Notice of Final Action by the EEO office dated December 19, 2019. Apparently, an Administrative Law Judge ruled against Patel, and the

agency ultimately agreed with the ALJ's finding. *See* Notice of Final Action (Dckt. No. 1, at 7 of 11). The ALJ decision is not in the record.[1]

"After exhausting her administrative remedies," Patel filed this lawsuit on March 21, 2020. *See* Def.'s Statement of Facts, at ¶ 27 (Dckt. No. 30). She filed a handwritten complaint by completing the Court's form for a discrimination claim. *See* Cplt. (Dckt. No. 1).

Patel described her allegations in two paragraphs. Several sentences addressed the scooter. She alleged that the Postal Service "gave me scooter now on the same floor which they denied in (2007-2013)." *Id.* at ¶ 12. She added: "Approx. 2007 (September), thru 2013, no accommodation given. Please see case [number]. Now they changed their own decision, breaks their own rules to accommodat[e] me, gave me a scooter." *Id.* at ¶ 13.

She also alleged that the Postal Service did not give her the lateral transfer. "Then again when the EAS-17 position opened they did not give me but gave to someone else, discriminated again. . . . What is right? What is wrong? How they are right?" *Id.*

She later dismissed her genetic information discrimination claim about the scooter, and dismissed her gender discrimination claim about the lateral transfer. *See* Def.'s Statement of Facts, at ¶ 27 (Dckt. No. 30); 5/20/21 Order, at 1 (Dckt. No. 24).

As an aside, Patel has filed at least five other discrimination or defamation lawsuits in this district since 2015. *See Patel v. Brennan* (15-cv-1904) (discrimination); *Patel v. United States* (15-cv-5993) (defamation); *Patel v. Brennan* (19-cv-3331) (discrimination); *Patel v. Brennan* (19-cv-4336) (discrimination); *Patel v. Brennan* (21-cv-3456) (discrimination). In each

---

[1] The description of the process by the parties is on the terse end of the spectrum. The parties did not include much of an explanation of the agency review process in general. At times, the filings seem to assume a high level of familiarity with the administrative process (such as what it means if an EEO office accepts a claim, and what it means if it doesn't). The parties also left a few gaps when describing the specific process at issue here, meaning the process involving Patel. A more detailed, comprehensive explanation would have assisted the Court.

discrimination lawsuit (including this one), she filed a form complaint and checked every box about every form of discrimination.

## Legal Standard

Rule 56 provides that the Court "shall grant" summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (citations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quotation marks omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (citations omitted).

## Analysis

Defendant moved for summary judgment on all claims. Patel's claims about the scooter rely on eight theories of discrimination: (1) race, (2) color, (3) religion, (4) national origin, (5) gender, (6) age, (7) retaliation, and (8) disability. Her claims about the lateral transfer rely on seven theories of discrimination: (1) race, (2) color, (3) religion, (4) national origin, (5) age, (6) retaliation, and (7) disability. (There's no gender-related claim about the lateral transfer.)

Patel does not support any of her arguments with legal authorities, and she never specifies the relevant statutes beyond those listed in her form complaint. *See* Cplt., at ¶ 9 (Dckt. No. 1). The Court nonetheless "construe[s] pro se filings liberally and [will] address the discernable arguments." *Wilson v. Brennan*, 724 F. App'x 466, 469 (7th Cir. 2018).

The Court grants summary judgment for the Postal Service on all claims, under all theories of discrimination.

## I.     The Scooter

The first claim is about the scooter. Patel claims that the Postal Service discriminated against her on account of her race (Asian Indian), color (brown), religion (Hindu), national origin (India), gender (female), age (she's in her 60s), disability (knees/feet), and retaliation (prior EEO activity) when it came to the use of a scooter.

The complaint described the alleged discrimination as follow: "Approx. Sep. – 2007 thru 2013 (Dec. 31st) they discriminated me and again almost same situation went revers[e] in appro. Sept. 2018, singling me out, still doing. USPS gave me disparate treatment, and *gave me scooter* now on the same floor which they denied in (2007–2013)." *See* Cplt., at ¶ 12 (Dckt. No. 1) (emphasis added). She added: "Approx. 2007 (September), thru 2013, no accommodation given. Please see cane (MSPB) CH [case number]. Now they changed their own decision, breaks their own rules to accommodate me. *gave me a scooter*. They do not follow their rules & regulation, their own policy, Labor rules. They discriminated me. I do not know what to believe." *Id.* at ¶ 13 (emphasis added).

Patel alleges a number of different types of discrimination. And she invokes a number of different statutes, too. She brings a discrimination claim about her race, color, religion, national origin, and gender under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981.

She brings an age discrimination claim under the Age Discrimination in Employment Act of 1967 (ADEA). Finally, she brings a disability discrimination claim under the Rehabilitation Act of 1973.[2] *See* Cplt., at ¶ 9 (Dckt. No. 1). For the sake of simplicity, and ease of lingo, the Court will treat all of the scooter-related claims as one claim.

She alleges retaliation, too, but she does not pin that theory to any particular statute. The lack of specificity is not problematic here. The same test applies under Title VII, the ADEA, and the Rehabilitation Act. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016) (analyzing retaliation under Title VII and the ADEA); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (analyzing retaliation under the Rehabilitation Act).

To succeed on her discrimination claims under Title VII and section 1981, Patel must demonstrate that "(1) [she] is a member of a class protected by the statute, (2) that [she] has been the subject of some form of adverse employment action (or that [she] has been subjected to a hostile work environment), and (3) that the employer took this adverse action on account of [her] membership in the protected class." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (citation omitted); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007) (applying the same requirements for a claim under Title VII and section 1981).

To prevail on her age discrimination claim under the ADEA, Patel must prove that her age was the "but-for" cause of the challenged job action. In other words, she must offer

---

[2] Patel's form complaint states that her disability discrimination claim is either under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act. *See* Cplt., at ¶ 9 (Dckt. No. 1). The ADA does not apply to federal employees, so her claim must be under the Rehabilitation Act. *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) ("[Plaintiff] has no remedy for employment discrimination under the Americans With Disabilities Act ('ADA') because she is a federal employee. Thus, we evaluate her claims under the Rehabilitation Act.") (citation omitted). That said, the ADA and Rehabilitation Act are resolved "by looking to the same standards and provisions." *See Vargas v. DeJoy*, 980 F.3d 1184, 1188 n.4 (7th Cir. 2020).

evidence that "but for [her] age, the adverse action would not have occurred." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (cleaned up).

"To determine whether the Rehabilitation Act has been violated in the employment context, we refer to the provisions and standards of the Americans with Disabilities Act." *Sansone v. Brennan*, 917 F.3d 975, 979 n.1 (7th Cir. 2019) (cleaned up) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810–11 (7th Cir. 2005)). Patel must satisfy three elements: "(1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by her disability." *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 490 (7th Cir. 2020).

Finally, to survive summary judgment on a claim for retaliation, Patel must offer evidence that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See, e.g.*, *Boston*, 816 F.3d at 464; *Kurowski v. Shinseki*, 557 F. App'x 549, 553 (7th Cir. 2014).

Under all these tests, a plaintiff bears the same burden of proof. At the summary judgment stage, courts must determine whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Seventh Circuit has "discarded the distinction between direct and indirect methods of proof in employment discrimination cases and clarified that all evidence must be evaluated as a whole." *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (citing *Ortiz*, 834 F.3d at 765–66). Importantly, the same analysis applies to Title VII, the ADEA, the Rehabilitation Act, and retaliation claims. *See Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*,

988 F.3d 948, 960 (7th Cir. 2021) (applying *Ortiz* to Title VII); *Carson v. Lake County*, 865 F.3d

526, 532–33 (7th Cir. 2017) (applying *Ortiz* to the ADEA); *Monroe v. Ind. Dep't of Transp.*, 871

F.3d 495, 504 (7th Cir. 2017) (applying *Ortiz* to the Rehabilitation Act); *Lauth*, 863 F.3d at 716

(applying *Ortiz* to a claim for retaliation).

One way of proving employment discrimination under Title VII, the ADEA, or the

Rehabilitation Act is the burden-shifting framework under *McDonnell Douglas v. Green*, 411

U.S. 792 (1973). *See Igasaki*, 988 F.3d at 957 (applying *McDonnell Douglas* to Title VII and the

ADEA claims); *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) (applying

*McDonnell Douglas* to an ADA claim). Under that approach, Patel must establish a *prima facie*

case of discrimination. To make a *prima facie* case, she needs to show that: (1) she belongs to a

protected class; (2) she performed her job to the defendant's legitimate expectations; (3) she

suffered an adverse employment action; and (4) similarly situated employees outside of her

protected class were treated more favorably by the defendant. *See Marshall v. Ind. Dep't of

Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020).

If Patel makes a *prima facie* case of discrimination, the burden shifts to the Postal Service

to offer a nondiscriminatory motive for its action. *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d

598, 601–02 (7th Cir. 2020). If the Postal Service does so, the burden shifts back to Patel to

show that the stated reason was a pretext for discrimination. *Id.* But again, under either

*McDonnell Douglas* or *Ortiz*, the Court evaluates all of the evidence as a whole. *See Ortiz*, 834

F.3d at 766.

As a threshold matter, there is a question about the relevant timeframe(s) for Patel's

complaint about the scooter. Her original EEO complaint (dated January 28, 2019) alleges that

the Postal Service discriminated against her during three periods: (1) January 2007 through

20

December 2013; (2) January 2017 through December 2017; and (3) January 2018 through April 2018. *See* EEO Complaint of Discrimination, at 2 (Dckt. No. 31-4).

A few months later, the Postal Service expressed a different understanding of the operative timeframe when it acknowledged receipt of her amended EEO complaint (after Patel added a claim about the lateral transfer). *See* Acknowledgement of Amendment to Complaint (Dckt. No. 31-7). The Postal Service stated that it understood Patel to be complaining about the use of a scooter from July 2017 to September 2018. *Id.* at 3 ("From July 17, 2017, and continuing to September 4, 2018, you were not accommodated per your medical restrictions when you were not given a scooter.").[3] So, as the Postal Service understood it at the time, there was no live issue about her use of the scooter before July 17, 2017.

Patel's complaint in this federal lawsuit added a wrinkle. She alleged that the Postal Service discriminated against her during a twelve-year period between September 2007 and September 2019.[4] *See* Cplt., at ¶ 6 (Dckt. No. 1). That allegation seemed to expand the period of discrimination, returning to something close to the boundaries of her original EEO complaint.

And then the time period seemingly contracted. In its statement of fact, the Postal Service highlighted that Patel complained in her EEO complaint about the use of a scooter from "July 17, 2017, to September 4, 2018." *See* Def.'s Statement of Facts, at ¶ 25 (Dckt. No. 30).

---

[3] Like other federal agencies, the Postal Service is responsible for the initial disposition of discrimination complaints lodged against the agency by its employees. *See* 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 *et seq.*; *see also Smith v. Potter*, 445 F.3d 1000, 1002 n.1 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). After the agency has dismissed or disposed of a complaint, federal employees have the right to appeal that decision to the EEOC, *see* 29 C.F.R. §§ 1614.403 *et seq.*, or file a complaint in federal court (as Patel did here), *see* 29 C.F.R. § 1614.407.

[4] The complaint appears to state, in the margins, "2007 thru Sept 2019, Mix Cases" and "January 29th 2019, Current." *See* Cplt., at ¶ 6 (Dckt. No. 1). The Court is unsure what Patel is referencing with "Mix Cases" or the January date, but their exact meanings are immaterial.

Patel responded: "It is January 23, 2017 thru September 4, 2018." *See* Patel Response, at ¶ 25 (Dckt. No. 40).

Viewing everything as a whole, there is some play in the joints about what timeframes are at issue. So, for purposes of this Opinion, the Court will divide it into two periods, and will address them separately. The first time period is September 2007 to 2013, and the second time period is January 2017 to September 4, 2018.

### A. Use of a Scooter from 2007 to 2013

Any claim about the lack of a scooter from 2007 to 2013 is time barred, by a long shot. She is several years too late.

A federal employee must exhaust her administrative remedies before suing the government for discrimination under Title VII, the ADEA, or the Rehabilitation Act. *See Green v. Brennan*, 578 U.S. 547, 553 (2016); *Perkins for Est. of Perkins v. Brennan*, 821 F. App'x 630, 632 (7th Cir. 2020); *Formella v. Brennan*, 817 F.3d 503, 510 (7th Cir. 2016). An employee must start that process by contacting an EEOC counselor within 45 days of the discrimination. Federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must . . . initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *See* 29 C.F.R. § 1614.105. Federal employees must go to the EEO office before going to the federal courthouse, and must do so within 45 days.

The requirement exists for good reason. Contacting the EEO office gives the government a chance to address issues and fix problems, right off the bat. *See Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008) ("This 'counseling requirement' serves an important function; it gives

agencies an opportunity to resolve an employee's complaint informally by conducting their own internal investigations.").  A prompt complaint gives the government a chance to take quick action, which benefits everyone.

Contacting the EEO office is not optional.  In fact, the "counseling requirement" functions as a "statute of limitations."  *Id.*  The Seventh Circuit will "bar claims if the forty-five day requirement is not satisfied and there is no occasion for equitable tolling."  *Id.* (citing *Rennie v. Garrett*, 896 F.2d 1057, 1061–62 (7th Cir. 1990)); *see also Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995) ("This deadline is construed as a statute of limitations and not as a jurisdictional prerequisite."); *O'Reilly v. Mayorkas*, 2021 WL 4034073, at *3 (N.D. Ill. 2021) (applying the 45-day requirement as a statute of limitations); *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 700 (N.D. Ill. 2020) (same); *Jones v. Brennan*, 2018 WL 3770069, at *3 (N.D. Ill. 2018) (same); *Marciniak v. Brennan*, 2017 WL 8200181, at *2 (N.D. Ill. 2017) ("While the rule is not jurisdictional, claims will be 'barred if the forty-five day requirement is not satisfied and there is no occasion for equitable tolling.'") (citing *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006)).

"Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII of the Civil Rights Act of 1964."  *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Patel did not satisfy the counseling requirement for the use of a scooter from 2007 to 2013.  There is no evidence in the record that Patel ever raised the issue of a scooter with the EEO office before October 2018.  *See* Partial Acceptance/Partial Dismissal of Formal EEO

Complaint, at 3 (Dckt. No. 31-6) ("The record reflects you requested pre-complaint processing on October 19, 2018 . . . ."). But 2018 is far too late to raise an issue from 2007 to 2013, as the EEO office later found. *Id.* ("Based on the Case Chronology just described, your request for pre-complaint counseling was made over **45 days** after the issue alleged to be discriminatory.") (addressing the use of a scooter from 2007 to 2013) (emphasis in original).[5]

Patel apparently wanted to use a scooter from 2007 to 2013, but didn't use one. She raised that issue for the first time years later. Years later is too late.

### B. Use of a Scooter from 2017 to 2018

The second time period covers January 2017 to September 4, 2018.[6] Any claim about the use of a scooter during that period fails for a simple reason: there was no adverse action. She wanted to use a scooter. And she used a scooter.

An essential element of a discrimination claim is adverse action taken against the employee. *See Marshall*, 973 F.3d at 791–92. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an

---

[5] Exhaustion is an affirmative defense, and so is the statute of limitations. *See United States v. Adent*, 821 F.3d 911, 914 (7th Cir. 2016) ("The running of the statute of limitations as a bar to suit is an affirmative defense and must be pleaded in a defendant's answer to the complaint.") (citing Fed. R. Civ. P. 8(c)); *Montgomery v. Donahoe*, 602 F. App'x 638, 639 n.1 (7th Cir. 2015) (characterizing the EEO counseling requirement as an "affirmative defense"). Here, the Postal Service made only a passing reference to untimeliness in its answer. It included a sentence saying that "any event that occurred before September 4, 2018, is untimely." *See* Answer, at ¶ 6 (Dckt. No. 16). (That date ties to the last day when she was not working. Recall that she returned to work on September 5, 2018.) Maybe Patel could have argued that the Postal Service waived the defense, but she didn't make that argument. So she waived waiver. In any event, the untimeliness of the claim is obvious on its face, and there is no point in allowing it to go forward when it is doomed to fail. So, to the extent that the Postal Office did not make the argument, the Court can apply the statute of limitations *sua sponte*. *See King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000) (affirming the district court's *sua sponte* dismissal based on the statute of limitations).

[6] Patel's complaint alleges discrimination through September 2019. *See* Cplt., at ¶ 6 (Dckt. No. 1). The Court assumes that Patel meant September 2018, as that is the timeframe Patel used in her Response to Defendant's Statement of Facts. *See* Patel Response, at ¶ 25 (Dckt. No. 40). She left work in April 2019, and has not returned.

actionable adverse action." *Serino v. Potter*, 178 F. App'x 552, 556 (7th Cir. 2006). An adverse employment action must be "materially" adverse to be actionable, and it must be "more than a mere inconvenience or an alteration of job responsibilities." *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001) (citations omitted). A materially adverse change in one's job includes "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013).

Here, Patel has not come forward with evidence of any adverse action about the use of the scooter from January 2017 to September 2018. For most of that period, she didn't ask to use a scooter. And when she wanted to use a scooter, the Postal Service allowed her to use a scooter.

Patel had knee replacement surgery at some point in 2017 (the parties don't reveal when, exactly). At some point, she presumably was off her feet. But her doctor released her to return to work on a limited-duty basis in January 2018. *See* Def.'s Statement of Facts, at ¶ 3 (Dckt. No. 30). There is no evidence of Patel asking to use a scooter at any point in 2017. And there is no evidence that the Postal Service ever denied a request to use a scooter in 2017.

That trend continued in 2018. Patel submitted five notes from her doctor in 2018, including January, March, April, June, and August. *See* January Work Restriction Form, at 2 (Dckt. No. 31-12); March Work Restriction Form, at 2 (Dckt. No. 31-13); April Work Restriction Form, at 2 (Dckt. No. 31-15); June Work Restriction Form, at 3 (Dckt. No. 31-15); August Work Restriction Form, at 2 (Dckt. No. 31-16). The doctor recommended an assortment of accommodations.

But none of the notes said anything about Patel using a scooter. There is nothing in the record supporting the notion that Patel ever gave the Postal Service a note from her doctor about using a scooter, until October 2018. *See* Def.'s Statement of Facts, at ¶¶ 6, 13 (Dckt. No. 30). And there is no record of Patel ever asking to use a scooter – even without a note from her doctor – before September 2018. *Id.* at ¶ 6.

The denial of a request for an accommodation can constitute an adverse employment action. *See, e.g.*, *Bilinsky v. Am. Airlines, Inc.*, 2018 WL 4181481, at *9 (N.D. Ill. 2018). But there is no evidence that the Postal Service ever denied a request for an accommodation from Patel. She never asked for a scooter before September 2018.

Patel returned to work in September 2018, and she began using a scooter. *See* Def.'s Statement of Facts, at ¶ 12 (Dckt. No. 30). She signed the Offer of Modified Assignment in September 2018. And for the first time, Patel raised the issue of the scooter: "I signed this with scooter requirement," and "before, in the past, no scooter available." *See* September Offer of Modified Assignment, at 2 (Dckt. No. 31-17).[7]

From that moment forward, Patel used a scooter at work. *See* Def.'s Statement of Facts, at ¶¶ 12, 15 (Dckt. No. 30). She used a scooter from September 2018 until April 2019, when she left work after an unspecified injury. *Id.* There is no evidence that the Postal Service ever denied her request for a scooter during that period of time.

In October 2018, Patel submitted a note from her doctor to support her ongoing use of a scooter. *Id.* at ¶ 13. For the first time, the doctor said something about a scooter: "Patient may

---

[7] The parties do not explain how, exactly, Patel went from not using a scooter to using a scooter. Maybe she asked. Presumably the parties had a conversation before she showed up to work and started using a scooter. But the full backstory is not in the record.

use a scooter at work." *See* October Work Restriction Form, at 2 (Dckt. No. 31-18). At that point, Patel was already using a scooter.

Based on the undisputed facts, Patel has no claim about the use of a scooter from 2017 to 2018. There is no evidence that she asked to use a scooter before September 2018. And when she raised the possibility of using a scooter in September 2018, the Postal Service allowed her to use it.

In sum, Patel waited too long to raise an issue about the use of a scooter in 2007–2013. And Patel received everything that she requested in 2017–2018. So she has no claim. The Court grants Defendant's motion for summary judgment on the claim about the scooter.[8]

## II.     Lateral Transfer

Patel's second theory is about the other position. Patel claims that the Postal Service discriminated against her on account of her race, color, religion, national origin, age, and disability by not granting her request for a lateral transfer. She alleges retaliation, too. She invokes Title VII, the ADEA, and the Rehabilitation Act.

The same legal framework that applied to Patel's claim about the scooter applies to her claim about the lateral transfer. The same conclusion applies, too. Patel fails to establish a *prima facie* case of discrimination for the lateral transfer. And in any event, she does not show that the Postal Service's reasons for its actions were pretextual.

Again, a bedrock requirement of a discrimination claim is an adverse employment action. An adverse employment action is "some quantitative or qualitative change in the terms or conditions of the plaintiff's employment that is more than a mere subjective preference." *See Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (citation omitted). "Such

---

[8] As the Court understands it, Patel is bringing a discrimination claim under the Rehabilitation Act, not a failure-to-accommodate claim under the Rehabilitation Act.

changes can involve the plaintiff's current wealth, [her] career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Id.* (citing *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016)). As a reminder, the Seventh Circuit cautions that "not everything that makes an employee unhappy is an actionable adverse action." *See Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004)).

A plaintiff must show causation, too. That is, a plaintiff must show that she suffered an adverse employment action for discriminatory reasons. *See Igasaki*, 988 F.3d at 959–60 (analyzing causation under Title VII and the ADEA); *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) ("We have consistently held that the statutory language in both the Rehabilitation Act and the ADA requires proof of causation.").

Patel has not come forward with any evidence that she suffered an adverse employment action. She also offers no evidence that she didn't get the transfer because of some discriminatory animus.

Patel's unstated assumption seems to be that the lateral transfer was hers for the taking. All she had to do was ask, and the position was hers.

To support that theory, she points to a few provisions in the Postal Service's handbook. *See* Patel Mem., at 18, 23–38 (Dckt. No. 40). But nothing in the handbook entitled Patel to the lateral transfer. In fact, the provision in question did the opposite. The handbook gives wide discretion to the Postal Service when selecting noncompetitive applicants. *See* U.S. Postal Service, Handbook EL-312, Employment and Placement § 743.11 (2021), https://about.usps.com/handbooks/el312.pdf (allowing management to select noncompetitive

voluntary lateral reassignments at any point during the announcement of a competitive process); *id.* at § 743 (explaining that the selection of noncompetitive applicants "is solely at the discretion of the selecting official"); *see also Bell v. Potter*, 2001 WL 1636891, at *3 (N.D. Ill. 2001) (describing a noncompetitive lateral transfer as a "procedure by which a supervisor-level employee at the USPS can transfer to another position at the same pay grade without having to compete against other employees").

The record shows that the Postal Service filled the position through a competitive application process. *See* Def.'s Statement of Facts, at ¶ 19 (Dckt. No. 30). There is no evidence in the record that the Postal Service used a competitive process for discriminatory reasons. And there is no evidence that the Postal Service ever excluded her from participating, let alone did so for discriminatory reasons. Patel was welcome to apply, like everyone else.

But she didn't. The record shows that Patel did not submit an application for the position through the Postal Service's eCareer platform. *Id.* at ¶ 22. She didn't dive into the applicant pool, and put herself in the running for the job. But dozens of other people did apply (73, to be exact), and one of them eventually got it. *Id.* at ¶ 21.

Patel didn't get the job, but she didn't apply for the job. If you don't apply for a job, you won't get the job. That's not discrimination. If you don't ask, you don't get.

Patel points out that she sent an email to her supervisor and expressed an interest in the job. *Id.* at ¶ 18. She attached an application to that email. *See* Koger EEO Investigative Aff., at ¶ 25 (Dckt. No. 31-10) ("Complainant sent me an email with her application for a lateral transfer . . . ."). There is no evidence that the supervisor saw that email before the application deadline. Koger's affidavit says that she saw Patel's email after the fact. *Id.*

But more importantly, sending an email is not the same thing as submitting an application. The Postal Service had wide discretion to decide how best to fill the position, and it decided to do so through a competitive application process. The Postal Service also had wide discretion to decide what potential applicants needed to do to apply. The Postal Service can pick its own procedures. And here, the Postal Service required applications through eCareer.

The antidiscrimination laws did not entitle Patel to skip the normal procedures and apply her own preferred way. Patel was not entitled to special treatment. The process applied to everyone, Patel included.

Patel did not suffer an adverse employment action. She didn't get the job that she wanted. But she didn't apply for it. The Postal Service did not reject her application, because Patel did not *submit* an application. There is no evidence that discrimination played any role in the decision to give the job to someone else.

Even if, for the sake of argument, Patel had made a *prima facie* case, her claim would not survive. The Postal Service offered a nondiscriminatory reason why she didn't get the job: she didn't apply for it on eCareer. *See* Def.'s Statement of Facts, at ¶ 22 (Dckt. No. 30) ("Patel did not apply on eCareer for the position."); Patel Response, at ¶ 22 (Dckt. No. 40) ("No one told me anything, I did apply as position posted the rules.") (failing to deny that she did not apply on eCareer).

The burden shifts to Patel to show pretext, which "is not 'just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.'" *Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d 384, 389–90 (7th Cir. 2020) (cleaned up) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)). To show pretext, Patel must come forward with evidence that "(a) the employer's nondiscriminatory reason was

dishonest; and (b) the employer's true reason was based on a discriminatory intent." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (cleaned up). "[A] plaintiff would not succeed on her discrimination claim if the employer honestly believed its stated rationale for its adverse employment action, even if this honest belief was foolish, trivial, or baseless. But, a plaintiff would win her case if she showed that the stated reason, even if actually present to the mind of the employer, wasn't what induced the employer to take the challenged employment action, because that would constitute pretext." *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 561 (7th Cir. 2019) (cleaned up).

Patel offered no evidence that the Postal Service gave a phony reason for its decision to give the job to someone else. Patel simply asserts that Koger purposefully ignored her email and denies that Grendziak told her anything about the vacant position. *See* Patel Response, at ¶¶ 19–20 (Dckt. No. 40). That's not a basis for a finding of pretext.

Patel came forward with no evidence that the Postal Service discriminated against her when she did not receive the lateral transfer. The Postal Service's motion for summary judgment on the claim about the lateral transfer is granted.

**III.     Seated Work**

At times, Patel's summary judgment filings seem to unveil a new, third theory of discrimination. Patel appears to argue that the Postal Service discriminated against her by failing to provide her with seated work between January 2018 and September 2018, when she was recovering from knee surgery.

That new theory appears in Patel's response to Defendant's statement of facts. Patel argues that the Postal Service never gave her a limited-work assignment or any seated work between January 2018 (when her doctor released her to limited work) and March 2018 (when she

31

went back to work). *See* Patel Response, at ¶ 3 (Dckt. No. 40) ("My doctor released me to limited duty work in January 2018, 4 hours of [sic] day, MS. Wulf the plant manager sent me home saying there is no work for me and they will let me know in writing. Despite of [sic] the work in ACO and in the transportation, same thing happened as 2007/2008 thru 2013. The Postal Service never gave me limited-duty assignment, so I went home losing my annual and sick leave, TSP, raise, promotion etc.").

She makes the same point about the time between March 2018 (when she left work, again, because of knee pain) and September 2018 (when she accepted the Postal Service's offer of limited-duty assignment). *See id.* at ¶ 9 ("Management did not give me any accommodation / limited duty work."); *see also* Def.'s Statement of Facts, at ¶ 9 (Dckt. No. 30) (alleging that she did not work from March 2018 through the end of August 2018).

For both periods, Patel argues that the lack of work cost her sick leave, raises, and promotions, and was therefore an adverse employment action. *See id.* at ¶¶ 3, 9, 12; Patel Mem., at 15–16 (Dckt. No. 40); *see also* Patel Dep., at 64:2-11 (Dckt. No. 31-3).

The Postal Service brushed aside the new theory. The Postal Service points out that Patel never raised the issue of seated work in her complaint to the EEO office. *See* Def's. Reply in Support of its Mtn. for Summ. J., at 5 (Dckt. No. 42) ("Patel's accepted claim [meaning the claim accepted for investigation by the EEO office] is not that she did not get seated work (whatever the location) . . . ."). So she failed to exhaust.

The new theory cannot support a claim for another basic reason. The complaint does not mention anything about seated work. Claims belong in pleadings, but here, there's nothing in the complaint about the lack of seated work. Patel cannot announce a new claim in her response to a motion for summary judgment.

A complaint does not have to plead legal theories. But it does need to include enough factual details to give the defendant fair notice of the claim. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015). A claim must have a foundation in a pleading, grounded in something. It cannot come out of nowhere, resting on nothing.

And here, Patel's complaint did not mention anything about the lack of seated work. *See* Cplt., at ¶¶ 12–13 (Dckt. No. 1) (describing her theories of discrimination). There is no toehold, let alone a foothold, in the complaint for any claim about seated work.

The Federal Rules establish a procedure for amending a complaint and adding new claims. A plaintiff must seek and obtain leave of Court to amend a complaint. *See* Fed. R. Civ. P. 15(a)(2). That rule exists for good reason. Orderly litigation requires pinning down what, exactly, the plaintiff is alleging. A defendant needs to know what it is defending itself *against*. Litigation is not supposed to be a moving target. A defendant needs a complaint that it can shoot at.

A response to a motion for summary judgment is not the time or the place to unveil a new theory of liability. *See Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) ("We decline to reach the substance of [Plaintiff's] hostile work environment claim because she never alleged such a claim in her district court complaint. It was raised for the first time in her opposition to the Postal Service's motion for summary judgment, and so it is not properly before this Court."); *Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming district court's refusal to consider a claim raised for the first time in a response to summary judgment); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Ibrahim v. Chicago Transit Auth.*, 2015 WL 859527, at *4 (N.D. Ill. 2015) ("The Court cannot

allow [Plaintiff] to now proceed on this new theory, raised for the first time almost five years after the case was filed and well after all discovery has been completed.").

Patel did not include a claim about seated work in her complaint. She did not seek leave of Court to amend the complaint to add a new claim. And she did not give fair notice to the Postal Service that seated work was one of the issues in the case. So the Court will not consider any claim about seated work, because there is no claim about seated work.[9]

### Conclusion

For the reasons stated above, the Postal Service's motion for summary judgment is granted.[10]

Date:   December 16, 2021

_____

Steven C. Seeger
United States District Judge

---

[9]  Even if Patel properly alleged facts in her federal complaint showing that she faced discrimination based on the lack of seated work, her claims would not succeed. It is not an adverse employment action if the Postal Service didn't have available seated-work hours because of Patel's requested work restrictions. *See Hancock v. Potter*, 531 F.3d 474, 478–79 (7th Cir. 2008) ("[Plaintiff protests that her work hours were reduced, but this was simply due to the fact that there was a lack of available work that fell within her very limiting restrictions."); *Langreder v. Freeman Expositions, Inc.*, 2016 WL 537953, at *5 (N.D. Ill. 2016) ("When a plaintiff requests certain work restrictions that reduce the availability of work hours, it does not qualify as an adverse employment action."); *Latham v. Donahue*, 40 F. Supp. 3d 1023, 1032 (N.D. Ill 2014) ("A refusal to provide Plaintiff's preferred accommodation is not an adverse employment action, even for purposes of retaliation claims."). Similarly, even if Patel brought a failure-to-accommodate claim under the Rehabilitation Act for the lack of seated work, she has not provided any evidence that the Postal Service was *responsible* for the lack of a seated work. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975–76 (7th Cir. 2009) ("To establish [a failure to reasonable accommodate], [the Plaintiff] must have presented evidence showing not only her attempt to engage in an interactive communication process with the school district to determine a reasonable accommodation, but also that the school district was responsible for any breakdown that occurred in that process.").

[10]  The Court has charitably construed her claims, and given Patel some latitude as a *pro se* litigant. Even so, the complaint approached – if not crossed – the boundary line for frivolousness. She brings a claim about the use of a scooter, even though the Postal Service allowed her to use a scooter. She also brings a claim about another job, even though she never formally applied for the job.

34